UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIMOTHY COLEMAN,

      Plaintiff,

vs.                                     Case No.:

LAKELAND AREA MASS TRANSIT
DISTRICT, D/B/A CITRUS CONNECTION,

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff TIMOTHY COLEMAN institutes this action against Defendant LAKELAND AREA MASS TRANSIT DISTRICT, D/B/A CITRUS CONNECTION, for damages and other relief for racial discrimination and retaliation violative of his rights under federal and state law.

### Jurisdiction and Venue

1.     This is an action for affirmative relief from the effects of practices violative of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (hereinafter "Title VII"), and the Florida Civil Rights Act of 1992 (hereinafter "FCRA"), Fla. Stat. §§ 760.01 to 760.11.

2.     Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343(a), and 1367(a); and 42 U.S.C. § 2000e-f(5). Declaratory relief is authorized under 28 U.S.C. §§ 2201 and 2202.

3.      Venue exists in this Court, as the events giving rise to this lawsuit occurred in Polk County, Florida.

## Parties

4.      Plaintiff is a resident of Polk County, Florida.  He is a former employee of Defendant Lakeland Area Mass Transit District.

5.      Defendant is a special taxing district created by an ordinance of Polk County, Florida, that provides public bus transportation services in the Lakeland, Florida, area.

## General Allegations

6.      Plaintiff was employed by Defendant as a mechanic from November 1999 until on or about August 31, 2009.

7.      Plaintiff is African American.

8.      On information and belief, Plaintiff was the first African American person whom Defendant employed as a mechanic.

9.      Up through 2008, Plaintiff received satisfactory annual performance evaluations during his employment with Defendant.

10.     On information and belief, Defendant awarded Plaintiff pay increases each year up through 2008.

11.     Defendant promoted Plaintiff several times, initially from "C" to "B" mechanic; next from "B" to "A" mechanic; and, in or about November 2006, from "A" mechanic to shop foreman.

12.     During Plaintiff's employment with Defendant, there were two mechanic

2

shop foreman slots, one for a morning shift and another for a night shift.

13. After promoting Plaintiff to shop foreman, Defendant consistently assigned Plaintiff to the night shift, with the exception of a brief period of time.

14. Plaintiff repeatedly requested to be shop foreman for the morning shift. However, despite Plaintiff's requests, when vacancies opened for the morning shift shop foreman slot, Defendant promoted non-black mechanics with less seniority than Plaintiff into the position.

15. During 2008, Plaintiff made complaints to management, including to Executive Director Danny Ours and Human Resources Manager Debbie Porte, that a white mechanic allegedly was making racist remarks in the workplace.

16. In or about mid-September 2008, Defendant hired Rita Wages, a white woman, to be Maintenance Manager. As such, Wages became Plaintiff's immediate supervisor.

17. In or about October 2008, Defendant canceled a merit-based pay increase that had been awarded to Plaintiff several months earlier.

18. On information and belief, in or December 2008, Defendant effectively required Plaintiff to pay back the amount of money he had earned at the increased pay rate by withholding such amount from Plaintiff's compensation.

19. On or about February 3, 2009, Wages told Plaintiff not to "nigger rig it" in reference to his work.

20. At least twice after that, Wages used the term "nigger rig" in Plaintiff's

3

presence.

21.     Reportedly, Wages stated that Plaintiff "gets away with things because of his skin color."

22.     On one occasion, Wages approached Plaintiff, rubbed his arm, and said, "Oh, I didn't know black people's skin was so soft."

23.     Shortly after Wages was hired, Plaintiff asked Wages to move him to the morning shop foreman slot, which was vacant. However, in or about January 2009, a non-black mechanic with less seniority than Plaintiff was promoted to shop foreman and assigned to the morning shift.

24.     The repeated favoring of non-black mechanics over Plaintiff for the morning shift shop foreman slot led Plaintiff to question Wages about the practice. Further, in or about February 2009, Plaintiff complained to Danny Ours and Debbie Porte that the failure to assign Plaintiff to the morning shop foreman slot was racially motivated. Plaintiff previously had made similar complaints to Ours and Porte.

25.     Prior to Wages' tenure, Plaintiff as shop foreman assisted in evaluating employees, recommending raises, scheduling, and hiring. However, Wages did not seek Plaintiff's assistance in such matters.

26.     Wages directed Plaintiff not to supervise or talk to white mechanics who were on Plaintiff's shift.

27.     Wages usually was dismissive of Plaintiff when Plaintiff would stop by her office to speak to her. She would wave him away with her hands as he tried to approach her.

4

However. Wages frequently permitted the white mechanics to visit her in her office for long periods of time.

28.    In or about February 2009, Plaintiff objected to Wages' scheduling of the only other African American mechanic to work every Saturday while allowing white mechanics with less seniority to alternate working on Saturdays. Wages told Plaintiff to "mind your own business" when he complained to her. Plaintiff complained to Danny Ours and Debbie Porte that he thought the scheduling arrangement was racist.

29.    In or about March 2009, Defendant rescheduled Plaintiff's shift from noon to 8:30 p.m. to 2:00 p.m. to 10:30 p.m. The only other mechanic on this shift was a white "A" mechanic, John Fay. Wages directed Plaintiff not to supervise Fay and said Fay did not need supervision.

30.    In or about early April 2009, Wages required Plaintiff to move out of the designated foreman's office and into a tool room. The room, as its name indicates, was where mechanics' tools were stored. Buses that were in Defendant's maintenance facility for repairs would be parked outside the entrance to the tool room, resulting in exhaust fumes filling the room.

31.    Plaintiff received no annual performance evaluation in 2009. The review was supposed to have been conducted in May 2009. On information and belief, white mechanics received performance evaluations in 2009.

32.    On June 20, 2009, Wages placed Plaintiff on an unpaid "administrative leave" of indefinite duration for the purported reason of not notifying her immediately the night

5

before of an accident that John Fay caused near closing time that had resulted in minor damage to a bus. Plaintiff was unaware of any requirement that Plaintiff do so. Fay also did not call Wages that night.

33.    Defendant continued Plaintiff's unpaid leave until July 2, 2009. By contrast, Defendant suspended Fay for one day.

34.    On or about July 1, 2009, Plaintiff submitted to Defendant a written race discrimination complaint against Rita Wages.

35.    On July 2, 2009, Wages suspended Plaintiff without pay for five of the days Plaintiff served on the unpaid administrative leave. Wages imposed the discipline not only in connection with Plaintiff's failure to notify her immediately at night on June 19th of Fay's minor damage to the bus, but also for a litany of other alleged wrongs. Plaintiff was not previously on notice of the other accusations that Wages lodged against him.

36.    On or about July 24, 2009, Plaintiff filed with the EEOC a charge alleging race discrimination and retaliation against Defendant.

37.    On August 7, 2009, Wages again placed Plaintiff on unpaid administrative leave of indefinite duration.

38.    By letter dated August 12, 2009, Wages notified Plaintiff of her intent to fire Plaintiff for allegedly violating a cell phone use policy. Plaintiff's unpaid leave of indefinite duration was continued.

39.    On August 20, 2009, Plaintiff met with Danny Ours and told Ours that the cell phone policy that Plaintiff was accused of violating was unclear and contradictory; that on

6

the occasion in question. Plaintiff was on break and in a safe zone behind a yellow safety line; that he thought he was in compliance with the policy at that time; and that the policy was being selectively enforced against him, as the other mechanics, including the shop foreman assigned to the morning shift and Rita Wages, frequently engaged in the same conduct with impunity.

40. On August 31, 2009, Danny Ours discharged Plaintiff.

41. As a result of the above-described manner in which Plaintiff was treated during Wages' tenure prior to the June 20, 2009, suspension, Plaintiff suffered loss of wages, emotional pain, mental anguish, humiliation, embarrassment, and stress.

42. As a result of Plaintiff's suspensions and termination, Plaintiff suffered loss of employment, loss of wages and benefits, emotional pain, mental anguish, humiliation, embarrassment, stress, inconvenience, and out-of-pocket expenses.

**Count 1: Title VII —Race Discrimination—Constructive Demotion**

43. Plaintiff incorporates by reference Paragraphs 1-11, 16-23, 25-27, 29-31, and 41.

44. At all material times, Defendant was an "employer" within the meaning of Title VII.

45. Defendant violated Title VII by constructively demoting Plaintiff from his shop foreman position because of his race.

46. As a result of Defendant's unlawful conduct, Plaintiff has suffered loss of

wages, humiliation, embarrassment, and emotional pain and suffering.

47.    Plaintiff has satisfied all conditions precedent for bringing suit on this claim under Title VII.

WHEREFORE, Plaintiff requests lost wages and benefits; compensatory damages for humiliation, embarrassment, and emotional pain and suffering; declaratory relief; any other relief that the Court deems just and necessary to effectuate the purposes of Title VII; prejudgment interest; post-judgment interest; attorney's fees; and costs.

Plaintiff demands a jury trial.

## Count 2: Title VII —Race Discrimination—Terms and Conditions of Employment

48.    Plaintiff incorporates by reference Paragraphs 1-16, 19-23, 25-30, 32, 35, 37-42.

49.    At all material times, Defendant was an "employer" within the meaning of Title VII.

50.    Defendant unlawfully imposed on Plaintiff racially discriminatory terms and conditions of employment by subjecting Plaintiff to a racially hostile work environment; constructive demotion from his shop foreman position; discriminatory shift assignments; and discriminatory application of rules and discipline.

51.    As a result of Defendant's unlawful conduct, Plaintiff has suffered loss of employment, loss of wages and benefits, humiliation, embarrassment, stress, emotional pain and suffering, inconvenience, and out-of-pocket expenses.

8

52. Plaintiff satisfied all conditions precedent for bringing suit under Title VII on this claim.

WHEREFORE, Plaintiff requests lost wages and benefits; compensatory damages for humiliation, embarrassment, stress, and emotional pain and suffering; declaratory relief; an order directing Defendant to remove from Plaintiff's personnel files any and all documents referring, relating to or discussing any discipline of Plaintiff during 2009; any other relief that the Court deems just and necessary to effectuate the purposes of Title VII; prejudgment interest; post-judgment interest; attorney's fees; and costs.

Plaintiff demands a jury trial.

## Count 3: Title VII—Race Discrimination—First Unpaid Administrative Leave and Suspension

53. Plaintiff incorporates by reference Paragraphs 1-23, 25-27, 29-33, 35, and 42.

54. At all material times, Defendant was an "employer" within the meaning of Title VII.

55. Defendant violated Title VII by placing Plaintiff on unpaid administrative leave commencing on June 20, 2009, until on or about July 1, 2009, and then suspending him on July 2, 2009, because of his race.

56. As a result of Defendant's unlawful conduct, Plaintiff has suffered loss of wages and benefits, humiliation, embarrassment, stress, emotional pain and suffering, and inconvenience.

57. Plaintiff satisfied all conditions precedent for bringing suit under Title VII on

this claim.

WHEREFORE, Plaintiff requests lost wages and benefits; compensatory damages for humiliation, embarrassment, stress, and emotional pain and suffering; declaratory relief; an order directing Defendant to remove from Plaintiff's personnel files any and all documents referring, relating to or discussing Defendant's placement of Plaintiff on unpaid administrative leave and suspension of Plaintiff; any other relief that the Court deems just and necessary to effectuate the purposes of Title VII; prejudgment interest; post-judgment interest; attorney's fees; and costs.

Plaintiff demands a jury trial.

**Count 4: Title VII —Race Discrimination—Second Unpaid Leave and Discharge**

58.     Plaintiff incorporates by reference Paragraphs 1-14, 16-23, 25-27, 29-33, 35, 37-40, and 42.

59.     At all material times, Defendant was an "employer" within the meaning of Title VII.

60.     Defendant violated Title VII by placing Plaintiff on forced unpaid leave from August 7 to 30, 2009, and then discharging Plaintiff on August 31, 2009, because of his race.

61.     As a result of Defendant's unlawful conduct, Plaintiff has suffered loss of employment, loss of wages and benefits, humiliation, embarrassment, stress, emotional pain and suffering, inconvenience, and out-of-pocket expenses.

62.     Plaintiff has satisfied all conditions precedent for bringing suit on this claim

10

under Title VII.

WHEREFORE, Plaintiff requests reinstatement with retroactive seniority; lost wages and benefits; front pay, if reinstatement is infeasible; compensatory damages for humiliation, embarrassment, stress, emotional pain and suffering, inconvenience, and out-of-pocket expenses; declaratory relief; an order directing Defendant to remove from Plaintiff's personnel files any and all documents referring, relating to or discussing Defendant's discharge of Plaintiff or placement of Plaintiff on unpaid leave; any other relief that the Court deems just and necessary to effectuate the purposes of Title VII; prejudgment interest; post-judgment interest; attorney's fees; and costs.

Plaintiff demands a jury trial.

### Count 5: Title VII—Retaliation—First Unpaid Leave and Suspension

63.    Plaintiff incorporates by reference Paragraphs 1-16, 23-24, 28-33, 35, and 41.

64.    At all material times, Defendant was an "employer" within the meaning of Title VII.

65.    Plaintiff engaged in activities protected under Title VII, including, but not limited to, complaining of racial discrimination in work assignments on his own behalf and another African American employee's behalf.

66.    Defendant unlawfully retaliated against Plaintiff because of his protected activities by placing him on unpaid administrative leave from on or about June 20, 2009, to on or about July 1, 2009, and suspending him on July 2, 2009.

11

67.     As a result of Defendant's unlawful conduct, Plaintiff has suffered lost wages, humiliation, embarrassment, stress, emotional pain and suffering, and inconvenience.

68.     Plaintiff satisfied all conditions precedent for bringing suit under Title VII on this claim.

WHEREFORE, Plaintiff requests reinstatement with retroactive seniority; lost wages and benefits; front pay, if reinstatement is infeasible; compensatory damages for humiliation, embarrassment, stress, emotional pain and suffering, and inconvenience; an order directing Defendant to remove from Plaintiff's personnel files any and all documents referring, relating to or discussing Defendant's placement of Plaintiff on unpaid administrative leave or suspension; declaratory relief; any other relief that the Court deems just and necessary to effectuate the purposes of Title VII; prejudgment interest; post-judgment interest; attorney's fees; and costs.

Plaintiff demands a jury trial.


### Count 6: Title VII—Retaliation—Second Unpaid Leave and Discharge

69.     Plaintiff incorporates by reference Paragraphs 1-16, 23-24, 28-40, and 42.

70.     At all material times, Defendant was an "employer" within the meaning of Title VII.

71.     Plaintiff engaged in activities protected under Title VII, including, but not limited to, complaining of racial discrimination in work assignments on his own behalf and another African American employee's behalf; filing a written discrimination grievance against

12

his supervisor; and filing an EEOC charge.

72.    Defendant unlawfully retaliated against Plaintiff by placing Plaintiff on forced unpaid leave commencing from August 7 to 30, 2009, and then discharging Plaintiff on August 31, 2009.

73.    As a result of Defendant's unlawful conduct, Plaintiff suffered unemployment, lost wages and benefits, out-of-pocket losses, humiliation, embarrassment, stress, emotional pain and suffering, and inconvenience.

74.    Plaintiff satisfied all conditions precedent for bringing suit under Title VII on this claim.

WHEREFORE, Plaintiff requests reinstatement with retroactive seniority; lost wages and benefits; front pay, if reinstatement is infeasible; compensatory damages for humiliation, embarrassment, stress, emotional pain and suffering, inconvenience, and out-of-pocket expenses; declaratory relief; any other relief that the Court deems just and necessary to effectuate the purposes of Title VII; prejudgment interest; post-judgment interest; attorney's fees; and costs.

Plaintiff demands a jury trial.

**Count 7: FCRA—Race Discrimination—Constructive Demotion**

75.    Plaintiff incorporates by reference Paragraphs 1-11, 16-23, 25-27, 29-31, and 41.

76.    At all material times, Defendant was an "employer" within the meaning of the

FCRA.

77. Defendant violated the FCRA by constructively demoting Plaintiff from his shop foreman position because of his race.

78. As a result of Defendant's unlawful conduct, Plaintiff has suffered humiliation, embarrassment, and emotional pain and suffering.

79. Plaintiff has satisfied all conditions precedent for bringing suit on this claim under the FCRA.

WHEREFORE, Plaintiff requests compensatory damages for humiliation, embarrassment, and emotional pain and suffering.

Plaintiff demands a jury trial.

## Count 8: FCRA—Race Discrimination—Terms and Conditions of Employment

80. Plaintiff incorporates by reference Paragraphs 1-16, 19-23, 25-30, 32, 35, 37-42.

81. At all material times, Defendant was an "employer" within the meaning of the FCRA.

82. Defendant unlawfully imposed on Plaintiff racially discriminatory terms and conditions of employment by subjecting Plaintiff to a racially hostile work environment; constructive demotion from his shop foreman position; discriminatory shift assignments; and discriminatory application of rules and discipline.

83. As a result of Defendant's unlawful conduct, Plaintiff has suffered humiliation,

14

embarrassment, stress, emotional pain and suffering, inconvenience, and out-of-pocket expenses.

84.    Plaintiff satisfied all conditions precedent for bringing suit under the FCRA on this claim.

WHEREFORE, Plaintiff requests compensatory damages for humiliation, embarrassment, stress, and emotional pain and suffering; and an order directing Defendant to remove from Plaintiff's personnel files any and all documents referring, relating to or discussing any discipline of Plaintiff during 2009.

Plaintiff demands a jury trial.

**Count 9: FCRA—Race Discrimination—First Unpaid Leave and Suspension**

85.    Plaintiff incorporates by reference Paragraphs 1-23, 25-27, 29-33, 35, and 42.

86.    At all material times, Defendant was an "employer" within the meaning of the FCRA.

87.    Defendant violated the FCRA by placing Plaintiff on unpaid administrative leave commencing on June 20, 2009, until on or about July 1, 2009, and then suspending him on July 2, 2009, because of his race.

88.    As a result of Defendant's unlawful conduct, Plaintiff has suffered humiliation, embarrassment, stress, emotional pain and suffering, and inconvenience.

89.    Plaintiff satisfied all conditions precedent for bringing suit under the FCRA on this claim.

WHEREFORE. Plaintiff requests compensatory damages for humiliation. embarrassment. stress. and emotional pain and suffering: and an order directing Defendant to remove from Plaintiff's personnel files any and all documents referring. relating to or discussing Defendant's placement of Plaintiff on unpaid administrative leave and suspension.

Plaintiff demands a jury trial.

### Count 10: FCRA—Race Discrimination—Second Unpaid Leave and Discharge

90.     Plaintiff incorporates by reference Paragraphs 1-14. 16-23. 25-27. 29-33. 35. 37-40. and 42.

91.     At all material times. Defendant was an "employer" within the meaning of Title VII.

92.     Defendant violated the FCRA by placing Plaintiff on forced unpaid leave from August 7 to 30. 2009. and then discharging Plaintiff on August 31. 2009. because of his race.

93.     As a result of Defendant's unlawful conduct. Plaintiff has suffered humiliation. embarrassment. stress. emotional pain and suffering. inconvenience. and out-of-pocket expenses.

94.     Plaintiff has satisfied all conditions precedent for bringing suit on this claim under the FCRA.

WHEREFORE. Plaintiff requests compensatory damages for humiliation. embarrassment. stress. emotional pain and suffering. inconvenience. and out-of-pocket expenses.

Plaintiff demands a jury trial.

### Count 11: FCRA—Retaliation—First Unpaid Leave and Suspension

95.     Plaintiff incorporates by reference Paragraphs 1-16, 23-24, 28-35, and 41.

96.     At all material times, Defendant was an "employer" within the meaning of Title VII.

97.     Plaintiff engaged in activities protected under the FCRA, including, but not limited to, complaining of racial discrimination in work assignments on his own behalf and another African American employee's behalf.

98.     Defendant unlawfully retaliated against Plaintiff because of his protected activities by placing him on unpaid administrative leave from on or about June 20, 2009, to on or about July 1, 2009, and suspending him on July 2, 2009.

99.     As a result of Defendant's unlawful conduct, Plaintiff has suffered humiliation, embarrassment, stress, emotional pain and suffering, and inconvenience.

100.    Plaintiff satisfied all conditions precedent for bringing suit under the FCRA on this claim.

WHEREFORE, Plaintiff requests compensatory damages for humiliation, embarrassment, stress, emotional pain and suffering, and inconvenience; and an order directing Defendant to remove from Plaintiff's personnel files any and all documents referring, relating to or discussing Defendant's placement of Plaintiff on unpaid administrative leave and suspension.

17

Plaintiff demands a jury trial.

### Count 12: FCRA—Retaliation—Second Unpaid Leave and Discharge

101.    Plaintiff incorporates by reference Paragraphs 1-16, 23-24, 28-40, and 42.

102.    At all material times, Defendant was an "employer" within the meaning of the FCRA.

103.    Plaintiff engaged in activities protected under the FCRA, including, but not limited to, complaining of racial discrimination in work assignments on his own behalf and another African American employee's behalf; filing a written discrimination grievance against his supervisor; and filing an EEOC charge.

104.    Defendant unlawfully retaliated against Plaintiff by placing Plaintiff on forced unpaid leave commencing from August 7 to 30, 2009, and then discharging Plaintiff on August 31, 2009.

105.    As a result of Defendant's unlawful conduct, Plaintiff suffered out-of-pocket losses, humiliation, embarrassment, stress, emotional pain and suffering, and inconvenience.

106.    Plaintiff satisfied all conditions precedent for bringing suit under the FCRA on this claim.

WHEREFORE, Plaintiff requests compensatory damages for humiliation, embarrassment, stress, emotional pain and suffering, inconvenience, and out-of-pocket expenses.

Plaintiff demands a jury trial.

18

Respectfully submitted this 12th day of January, 2012, by:

Kathryn S. Piscitelli
Florida Bar No. 0368598
E-mail: kpiscitelli@tampabay.rr.co
Peter F. Helwig
Florida Bar No. 0588113
E-mail: pfhelwig@tampabay.rr.com
Harris & Helwig, P.A.
6700 South Florida Avenue, Suite 31
Lakeland, Florida 33813
Telephone: (863) 648-2958
Facsimile: (863) 619-8901
**Attorneys for Plaintiff**

19